**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOHN GILBERT,** )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>**TERRY TIBBALS,** )<br>)<br>Respondent. ) | **CASE NO. 1:10CV2450**<br><br>**JUDGE SARA LIOI**<br><br>**MAGISTRATE JUDGE GREG WHITE**<br><br><br>**REPORT AND RECOMMENDATION** |

Petitioner, John Gilbert ("Gilbert"), challenges the constitutionality of his conviction in the case of *State v. Gilbert*, Cuyahoga County Court of Common Pleas Case No. CR484177. Gilbert, represented by counsel, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 27, 2010. On February 25, 2011, Warden Terry Tibbals ("Respondent") filed his Answer/Return of Writ. (Doc. No. 5.) Gilbert filed a Traverse on May 27, 2011. (Doc. No. 9.) For reasons set forth in detail below, it is recommended that Gilbert's Petition be denied.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Gilbert's conviction as follows:

> {¶ 1} In August 2007, defendant-appellant, John Gilbert, was convicted, after a jury trial, of one count of murder and two counts of aggravated robbery, all with firearm specifications. The convictions exposed Gilbert to a sentence of 18 years to life on the murder charge and three to 10 years on the aggravated robbery charges, *i.e.*, a minimum of 18 years to life in prison, and a maximum of 28 years to life in prison.
>
> {¶ 2} While awaiting sentencing, Gilbert wrote several letters to the prosecutor asking to testify at co-defendant John Kent's trial "to let my statement come out." In October 2007, Gilbert testified against Kent.

{¶ 3} Prior to Gilbert's testimony, the following discussion was had among the prosecutor, defense counsel, and trial judge:

{¶ 4} "[THE PROSECUTOR]: I would like the record to reflect that last month the State of Ohio successfully prosecuted John Gilbert. He was found guilty of the crime of murder, as well as the crimes of aggravated robbery with gun specifications. He has not been sentenced by you, Judge. I believe that will take place following the conclusion of the trial that we are in right now."

{¶ 5} "I've had extensive discussions with Mr. Gilbert's attorneys concerning his appearance on the witness stand and testimony in this case. And the concerns I've received from the defense team is, first of all, John Gilbert is willing to testify-he has sent letters indicating that as well-is willing to testify, but that there needs to be an assurance by the State of Ohio that should he take the stand in this case that anything that he says concerning the circumstances surrounding the homicide would not be used against him should a reviewing court or this court choose to grant him either a new trial or the court of appeals send his case back for a new trial."

{¶ 6} "So there has to be an assurance or request for immunity from the State of Ohio to allow Mr. Gilbert to testify in order for his rights to be adequately protected."

{¶ 7} "So that's what we are doing right now, Judge, requesting that Mr. Gilbert receive the assurance from the court that anything that he says or testifies to here today cannot be used against him in any subsequent hearing or prosecution."

{¶ 8} "[DEFENSE COUNSEL]: I think it's accurate to say that there have been Fifth Amendment concerns on behalf of Mr. Gilbert, and that he would not be willing to testify unless there are protections offered him in regards to his Fifth Amendment rights, and that's how we get here today."

{¶ 9} "THE COURT: So subject to the immunity he would be willing to offer his testimony in the trial?"

{¶ 10} "[DEFENSE COUNSEL]: That's my understanding, your Honor, that if this court orders him under the prosecutor's request for immunity that he would then testify."

{¶ 11} "THE COURT: Okay. Then with that in mind, the court hereby grants the State's request for a grant of immunity as to any and all statements that he may make during his testimony, both on direct and, of course, cross-examination, in this trial."

{¶ 12} "[THE PROSECUTOR]: Thank you, your Honor."

{¶ 13} "THE COURT: Very good."

{¶ 14} "[DEFENSE COUNSEL]: And I assume then that Mr. Gilbert is ordered to testify under that?"

{¶ 15} "THE COURT: Subject to that, yes."

{¶ 16} On direct examination, Gilbert testified that he understood that the grant of immunity meant that anything he testified to in Kent's trial could not be used

against him "in any further proceeding, should [he] be lucky enough to get a new trial or the court of appeals send [his] case back." He testified further that he was facing a maximum of 28 years to life in prison, but was hopeful that, after considering his testimony against Kent, the judge would sentence him to the minimum sentence (18 years to life). Gilbert then testified regarding his and Kent's involvement in the murder.

{¶ 17} On the day of Gilbert's sentencing, defense counsel filed a motion to dismiss the case against Gilbert. Counsel argued that, in Ohio, the only grant of immunity available is "transactional immunity" whereby once a witness has been granted immunity, a trial court lacks jurisdiction to provide a forum for any further prosecution of that witness, or to punish that witness for any crime committed during the transaction about which the witness testified. Therefore, counsel argued, because Gilbert had been granted immunity, that immunity must have been transactional, and hence, the trial court lacked jurisdiction to sentence him for the crimes upon which the jury had returned its guilty verdicts.

{¶ 18} The trial court denied the motion to dismiss. The trial judge found that "the interests of justice are not to be confused with the game of 'gotcha' (from the perspective of this court, an exceptionally charitable assessment of the defense motion). He further held that the "clear understanding" of all the parties with respect to the "grant of immunity" was that the immunity applied only to any subsequent proceedings in the event the appellate court reversed and/or remanded the case for further proceedings, or the trial court granted a motion for a new trial. The court then sentenced Gilbert to 18 years to life in prison on the murder conviction, with concurrent eight year terms on the aggravated robbery convictions.

*State v. Gilbert*, 2009 WL 342876, *1 -2 (Ohio App. 8th Dist. Feb. 12, 2009).

## II. Procedural History

### A. Conviction

On July 28, 2006, a Cuyahoga County Grand Jury charged Gilbert with two counts of Aggravated Murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01 and two counts of Aggravated Robbery in violation of O.R.C. § 2911.01. (Doc. No. 5-1, Exh. 1.) All counts contained a one-year and a three-year firearm specification. *Id*. On August 20, 2007, a jury found Gilbert guilty of one count of Murder and two counts of Aggravated Robbery, including all firearm specifications. *Id*., Exh. 2.

On November 29, 2007, the day Gilbert was to be sentenced, he filed a motion to dismiss arguing that "[a]s a result of the State-initiated order of this Court that compelled Mr. Gilbert to testify, this Court now lacks jurisdiction to punish Mr. Gilbert for the crimes upon which the jury

3

has returned its guilty verdict." *Id.*, Exh. 3. The court denied the motion[1] and sentenced Gilbert on the murder conviction to the minimum, eighteen years to life imprisonment. All other sentences were made concurrent thereto. *Id.*, Exh. 4.

**B.      Direct Appeal**

On December 31, 2007, Gilbert, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising a single assignment of error as follows:

> The trial court violated the appellant's due process rights under both the United States and Ohio Constitutions when after the appellant was granted immunity the trial court proceeded with judgment and sentencing on the convictions for which he was granted immunity.

*Id.*, Exhs. 5 & 6. On February 12, 2009, Gilbert's conviction was affirmed. *Id.*, Exh. 8.

On April 9, 2009, Gilbert filed a Notice of Appeal with the Supreme Court of Ohio raising three Propositions of Law:

> 1.      A witness who has been granted immunity by a trial court cannot be subsequently tried or punished for any criminal offense that has been the subject of the witness' testimony.
>
> 2.      The failure of the prosecuting attorney to request immunity in writing does not deprive the defendant of the protection from subsequent criminal prosecution or punishment when the defendant complies with a trial court's immunity order.
>
> 3.      A witness who has indicated that he will not testify unless granted immunity has refused "to answer or produce information on the basis of the witness's privilege against self-incrimination" under R.C. 2945.44(A).

*Id.*, Exhs. 9 & 10. On July 29, 2009, the appeal was dismissed as not involving any substantial constitutional question.

On June 22, 2009, Gilbert also filed a *pro se* notice of appeal and motion for delayed appeal to the Ohio Supreme Court raising a single proposition of law:

> When a Trial court violates an appellant's Due Process rights under the United States Constitution, and Ohio's Constitution, after Appellant was granted Immunity and

---

[1] Respondent cites to the trial transcript (trial volume 5, pp. 1055, 1058) in support of the trial court overruling Gilbert's motion to dismiss. The Court is unable to confirm this denial as the trial transcript was not provided as part of the record. Nonetheless, since the trial court proceeded to sentence Gilbert, the motion to dismiss was obviously denied.

> given protections against violating His Fifth Amendment right to remain silent for prosecution, or punishment, purposes. The Trial Court proceeded to Judgment and sentencing the Appellant on the convictions for which He was granted Immunity, said convictions and/or sentences must be vacated based upon when the Immunity was granted during the proceedings.

*Id.*, Exh. 14. On September 30, 2009, this appeal was also dismissed as not involving any substantial constitutional question. *Id.*, Exh. 15.

### C. Delayed Application to Reopen Appeal

On April 1, 2010, Gilbert, *pro se*, filed a request for leave to file a delayed application for reopening pursuant to Ohio App. R. 26(B) in the state appellate court. *Id.*, Exhs. 16 & 17. On August 27, 2010, the application was denied. *Id.*, Exh. 21. Gilbert did not pursue an appeal to the Ohio Supreme Court.

### D. Federal Habeas Petition

On October 27, 2010, Gilbert filed a Petition for Writ of Habeas Corpus and asserted a single ground for relief:

> **GROUND ONE**: Mr. Gilbert was denied federal due process when, after having been given transactional immunity in return for his testimony, he was sentenced in connection with the same criminal conduct for which he was now immune from punishment.

(Doc. No. 1.)

### III. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Clearly established federal law is to be determined by the holdings of the

United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

A modified form of AEDPA deference is applied where the state court was silent as to whether its disposition of a constitutional claim was based upon state evidentiary law or federal constitutional law. *Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005); *Howard v. Bouchard*, 405 F.3d 459, 467-68 (6th Cir. 2005); *Harris v. Stovall*, 212 F.3d 940, 943 & n.1 (6th Cir. 2000). "This standard of review requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law." *Maldonado*, 416 F.3d at 476 (*citing Howard*, 405 F.3d at 467; *Harris*, 212 F.3d at 943); *see also Stewart v. Erwin*, 503 F.3d 488, 493-94 (6th Cir. 2007). Where the state court adjudicated the petitioner's *claim*, but

6

never addressed the constitutional *issue*, the Sixth Circuit applies the "modified AEDPA deference" described in *Maldonado*, *supra*. *See Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007) (*citing Maldonado*, 416 F.3d at 476). Here, the state appellate court denied Gilbert's federal due process claim without specifically addressing the constitutional issue. As such, the Court will conduct a deferential review.

Gilbert contends that when he testified he received transactional immunity, the only type provided for by Ohio statute; and, therefore, he was denied due process under the Fourteenth Amendment when he was later sent to prison. (Doc. No. 1 at 7.) Specifically, he claims that "as a result of the State-initiated order of the trial court that compelled Mr. Gilbert to testify, the trial court lacked jurisdiction to punish [him] for the crimes upon which the jury has returned its guilty verdicts." *Id*.

Respondent argues that the State was not required to provide Gilbert with transactional immunity as he failed to establish the required elements. Specifically, Gilbert did not refuse to testify, nor was there a written request by the prosecutor asking for immunity. (Doc. No. 5 at 13.) Respondent contends, therefore, that Gilbert's due process rights were not violated as he neither requested nor received transactional immunity. (Doc. No. 5 at 10-11.)

The Ohio transactional immunity statute, O.R.C. § 2945.44(B), in effect when Gilbert testified, provided as follows:

> If, but for this section, the witness would have been privileged to withhold an answer or any information given in any criminal proceeding, and the witness complies with an order under division (A) of this section compelling the witness to give an answer or produce any information, the witness shall not be prosecuted or subjected to any criminal penalty in the courts of this state for or on account of any transaction or matter concerning which, in compliance with the order, the witness gave an answer or produced any information.

The procedure for granting transactional immunity is codified in O.R.C. § 2945.44(A). When a witness refuses to answer a question at trial and invokes the Fifth Amendment privilege against self-incrimination, the common pleas court shall compel the testimony of a witness if both of the following apply: (1) the prosecutor makes a written request to the common pleas court to order the witness to answer notwithstanding the claim of privilege; and, (2) the court informs the witness on the record that by answering, the witness will receive immunity. *See*

7

O.R.C. § 2945.44(A)(1) & (2). Before granting immunity, the court must also determine, in its discretion, whether the prosecutor's request for immunity would further the administration of justice. *Id.*; *see also State ex rel. Koren v. Grogan*, 68 Ohio St.3d 590, 592, 629 N.E.2d 446, 449 (1994); *State ex rel. Ney v. Niehaus*, 33 Ohio St.3d 118, 515 N.E.2d 914 (1987).

The statute provides for transactional immunity (which precludes prosecution for any event to which the person testifies) and not simply use immunity (which precludes only the use of the person's statements in a subsequent prosecution). *See, e.g.*, *Kastigar v. U.S.,* 406 U.S. 441, 453 (1972) (defines use immunity as "coextensive with the scope of the privilege against self-incrimination"and "has never been construed to mean that one who invokes it cannot subsequently be prosecuted."); *United States v. Fitch*, 964 F.2d 571, 575-576 (6th Cir. 1992) ("Transactional immunity is full immunity from prosecution for any offense to which the testimony relates," and it "prohibits the government from prosecuting the defendant at any time with respect to incriminating matters that the witness disclosed.") (citations omitted).

In Ohio, courts may grant only transactional immunity, not use immunity. *State ex rel. Koren v. Grogan*, 68 Ohio St.3d 590, 593, 1994 Ohio 327, 629 N.E.2d 446 (1994) (*citing State ex rel. Leis v. Outcalt*, 1 Ohio St.3d 147, 149, 438 N.E.2d 443 (1982). Ohio courts, however, have upheld "agreements not to prosecute" in exchange for information. *See State v. Small*, 41 Ohio App.3d 252, 255; *State v. Sizemore*, 1996 WL 684334, *7 (Ohio App. 8th Dist., Nov. 27, 1996).

The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." This privilege not only extends to answers that would in themselves support a conviction under a federal criminal statute, but also embraces those which would supply a "link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

The Due Process Clause of the Fourteenth Amendment prohibits the admission of coerced confessions procured by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). Nonetheless, a federal statute allows the government to compel a witness to testify in exchange for immunity from the use of such

testimony in any criminal case or any evidence derived therefrom. 18 U.S.C. § 6002. The privilege against self-incrimination, therefore, is preserved when the government satisfies its "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *United States v. Bartel*, 19 F.3d 1105, 1113 (6th Cir. 1994) (*quoting Kastigar*, 406 U.S. at 459-460.) In comparison, transactional immunity, which provides full immunity from prosecution for any offense relating to one's testimony, affords a witness considerably broader protection than does the Fifth Amendment privilege. *Kastigar*, 406 U.S. at 453.

Federal courts, also, have noted that the government may informally grant a defendant immunity in exchange for his cooperation. *See United States v. Pelletier*, 898 F.2d 297, 301 (2d Cir. 1990); *United States v. Hogan*, 862 F.2d 386, 388 (1st Cir. 1988); *United States v. Brown*, 801 F.2d 352, 354 (8th Cir. 1986); *United States v. Harvey*, 791 F.2d 294, 300–01 (4th Cir. 1986); *United States v. Irvine*, 756 F.2d 708, 710–11 (9th Cir. 1985). Since a cooperation/immunity agreement is in the nature of a contract, its effect is strongly influenced by contract law principles. *Id*. The Sixth Circuit, has held that immunity agreements are like contracts in that "normal contract law standards govern their interpretation." *McKissic v. Birkett*, 200 Fed. Appx 463, 468 (6th Cir. 2006) (*citing Fitch*, 964 F.2d at 576.) Furthermore, due process requires the prosecutor to adhere to the terms of any immunity agreement that it makes. *Fitch*, 964 F.2d at 576.

The Sixth Circuit recently found that there is no "clearly established" Supreme Court precedent regarding immunization of witnesses. *See Landrum v. Mitchell,* 625 F.3d 905, 922-923 (6th Cir. 2010) *cert. denied* – S.Ct. – , 2011 WL 4530517 (Oct. 3, 2011). Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385

(1991).

The state appellate court, applying O.R.C. § 2945.44, found that the trial court had no authority to grant transactional immunity, but, that Gilbert suffered no prejudice from the error as he received the "benefit of his bargain:"

> {¶ 21} In Ohio, the authority to grant immunity derives from statute. Under R.C. 2945.44, the trial court may not grant immunity unless 1) the witness refuses to answer on the basis of his privilege against self-incrimination, 2) the prosecuting attorney makes a written request to the common pleas court to order the witness to answer, and 3) the court informs the witness he will receive immunity. *State ex rel. Koren v. Grogan* (1994), 68 Ohio St.3d 590, 629 N.E.2d 446, 1994-Ohio327, *citing State ex rel. Leis v. Outcalt* (1982), 1 Ohio St.3d 147, 149, 438 N.E.2d 443. The statute further provides that if the witness complies with the court's order compelling him to answer or produce information, "he shall not be prosecuted or subjected to any criminal penalty in the courts of this state for or on account of any transaction or matter concerning which, in compliance with the order, he gave an answer or produced any information."
>
> {¶ 22} R.C. 2944.45 authorizes a court to grant only transactional immunity, *i.e.*, immunity from prosecution for any criminal act about which the witness testified. *Koren, supra* at 592-593, 629 N.E.2d 446. The statute makes no provision for, and a trial court may not grant, use immunity, *i.e.*, immunity which "protects the witness only from having the specific compelled testimony or the information directly or indirectly derived from the compelled testimony used as evidence against him in a later prosecution." *Id.* at 593, 629 N.E.2d 446, *citing* Anderson's Ohio Criminal Practice and Procedure (2 Ed. 191) 231, Section 52.101. Transactional immunity is broader than use immunity because it completely prohibits the government from prosecuting the defendant for the immunized crimes, rather than merely preventing the use of the immunized testimony. *State v. Adams*, 153 Ohio App.3d 134, 791 N.E.2d 1045, 2003-Ohio-3086, ¶ 31, *citing Kastigar v. United States* (1972), 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212.
>
> {¶ 23} The statutory requirements for granting transactional immunity were not met in this case. Gilbert did not refuse to testify; in fact, he wrote letters to the prosecutor asking to testify so that he could tell his story and attempt to curry favor from the trial judge at his sentencing. Second, although the prosecutor orally asked the judge to grant immunity, he made no written request for immunity, as required by statute. A trial court may exercise its discretion to grant or deny transactional immunity only after the statutory requirements are met. *Leis, supra* at 149, 438 N.E.2d 443. Because the statutory requirements were not met, the trial court had no authority to grant transactional immunity to Gilbert. Accordingly, we find no error in the trial court's denial of Gilbert's motion to dismiss, which was premised upon the alleged grant of transactional immunity.
>
> {¶ 24} It is apparent that the parties asked for the equivalent of use immunity for Gilbert in exchange for his testimony against Kent. The prosecutor clearly requested that the court give Gilbert an assurance that his testimony in Kent's case "cannot be used against him in any subsequent hearing or prosecution." Defense counsel did not dispute the prosecutor's explanation of how the immunity would be utilized and before he testified, Gilbert acknowledged his understanding that the grant of immunity from the trial court meant that his testimony would not be used against him if there were a new trial. Clearly, the parties understood and agreed that the immunity sought from

the trial court applied only to any later proceedings against Gilbert. However, the trial court had no authority under R.C. 2944.45 to grant such limited use immunity.

{¶ 25} Even though the trial court erred in telling Gilbert he would receive "immunity" for his testimony, we find no prejudice to Gilbert as a result of the trial court's error. The only thing wrong in this case was the unfortunate use of the term "immunity" to describe the deal offered to Gilbert if he testified. The State concedes that although Gilbert could not receive immunity, "the State entered into an agreement" with Gilbert that his testimony would not be used against him in any subsequent prosecution. It is apparent from the transcript that Gilbert clearly understood the agreement applied only to any subsequent prosecution against him, and not to the guilty verdict already rendered by the jury. Gilbert received the benefit of the bargain: as the trial court did not grant a new trial, and this court is not reversing his conviction,[FN1] Gilbert's testimony will not be used against him in any further proceedings. Further, Gilbert received the minimum sentence, which he admitted was part of the reason for his testimony.

> FN1. Other than immunity, Gilbert raised no challenges to his conviction.

{¶ 26} While Ohio does not provide for use immunity, nothing prevents the State and defendant from entering into an agreement in exchange for testimony. There was such an agreement here, it is adequately outlined in the record, and the parties involved have all lived up to their obligations under the agreement.

{¶ 27} Accordingly, the trial court had jurisdiction to sentence Gilbert to the crimes of which the jury had found him guilty and did not err in denying his motion to dismiss.

*State v. Gilbert*, 2009 WL 342876, *3-4 (Ohio App. 8th Dist. Feb. 12, 2009).

The state appellate court found that the trial court erred in granting immunity to Gilbert. It concluded, however, that Gilbert, after he was found guilty by a jury, entered into an agreement with the State that his cooperative testimony would not be used against him in any subsequent prosecution. Gilbert also expressed hope that his cooperation would result in a minimum sentence for his previous conviction. The state appellate court noted that Gilbert received the benefit of the bargain since he did not receive a new trial and, as a result, his testimony was not used against him. Furthermore, Gilbert received the minimum sentence. The Sixth Circuit has indicated that due process requires the prosecutor to "adhere to the terms of any immunity agreement it makes." *Fitch*, 964 F.2d at 576.

Furthermore, Gilbert has not shown that the relevant state court decision violated "clearly established" Supreme Court precedent. The Supreme Court cases Gilbert cites do not discuss transactional immunity, only that a state's conduct can deprive a defendant of due process guaranteed by the Fourteenth Amendment. *See Hicks v. Oklahoma*, 447 U.S. 343 (1980)

11

(Regarding an improper jury instruction about length of sentence, a "[p]etitioner's interest in the exercise of the jury's discretion in imposing punishment is not merely a matter of state procedural law, but is a liberty interest that the Fourteenth Amendment preserves against arbitrary deprivation by the State.")[2] Gilbert has not demonstrated a "clearly established" federal precedent or that the state courts' decisions were arbitrary. He merely relies on Ohio case law to argue his federal due process violation.

The Ohio courts concluded that under these facts Gilbert was properly sentenced. While Ohio may not recognize court granted use immunity, it does not prohibit the type of agreement made here between Gilbert and his prosecutor. Furthermore, federal due process is not implicated as long as the agreement is honored. It was.

Because the Ohio courts denied Gilbert relief on this claim under state law and there is no federal constitutional right to transactional immunity, Gilbert has not demonstrated a federal due process violation. *See Landrum,* 625 F.3d at 922 -923.

### V. Conclusion

For the foregoing reasons, it is recommended that Gilbert's Petition be denied.

s/ Greg White
United States Magistrate Judge

Date:  January 17, 2012

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See United States v. Walters*, 638 F.2d**

---

[2] Gilbert also relies on *Dist. Attorney's Office v. Osborne*, – U.S. – , 129 S.Ct. 2308, 2320 (2009), which was a Section 1983 action claiming that the State's refusal to provide evidence for DNA testing violated his due process rights. *Id*. at 2319, 2319. The *Osborne* Court held that there is no freestanding due process right to obtain DNA evidence in the post-conviction setting. *Id*. at 2322. This case does not help Gilbert.

**947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**